IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00540-WYD-BNB

JONATHAN AIN,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendant.

_____

**ORDER**
_____

I.    INTRODUCTION

THIS MATTER is before the Court on Defendant Unum's Motion for Partial Summary Judgment, [doc.# 83], filed June 1, 2009. In the motion Defendants seek partial summary judgment as to Plaintiff's fourth and sixth claims for relief. For the reasons stated below, the motion will be granted.

II.    FACTUAL BACKGROUND

Plaintiff initiated this action claiming that Defendant improperly terminated his disability benefits and has refused to reinstate those benefits despite numerous requests for payment. I will briefly summarize only those facts which I deem pertinent to my ruling. I have, however, construed all of the facts in the light most favorable to the Movants as I must for purposes of this summary judgment motion. *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

Plaintiff is a former radiologist. In August 2003, Plaintiff submitted a claim for

long term disability benefits under an insurance policy issued by Defendant.  Defendant approved his claim.  Some time prior to June, 2007, Defendant received an anonymous letter address to its "Fraud Department" questioning Plaintiff's disability status and alerting Defendant of possible insurance fraud by Plaintiff.  Defendant commenced an investigation and submitted a suspected fraud referral to the Fraud Division of the Florida Department of Financial Services.  Defendant also sent a fraud report to the State of Colorado Office of the Attorney General.  Defendant's investigation revealed that Plaintiff had founded and participated in a fishing tournament in the Florida Keys and was the 2006 Grand Champion of the tournament, that in March 2006 Plaintiff wrote on an on-line "blog" site that he had skied "a few power runs" in Vail, and that when completing a form relating to the renewal of his private pilot licence in February, 2005, Plaintiff responded "no" when asked whether his medical history included "other illness, disability or surgery."  By a letter dated June 28, 2007, Defendant informed Plaintiff of its decision to terminate the payment of disability benefits.

Plaintiff brings claims for bad faith, unreasonable denial or delay of payment of benefits in violation of the Colorado Unfair Competition - Deceptive Practices Act, C.R.S. § 10-3-1101, *et seq.*, breach of contract, violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101, *et seq.*, negligence, and outrageous conduct/intentional infliction of emotional distress.  In the instant motion, Defendant seeks summary judgment as to Plaintiff's fourth claim for relief pursuant to the CCPA and his sixth claim for relief for outrageous conduct.

III.   ANALYSIS

    A.   Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B.   Whether Partial Summary Judgment is Proper in this Case

        1.   CCPA Claim

The purpose of the CCPA is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices.  C.R.S. § 6-2-102.  It is a lengthy statutory scheme with many sections and subparts.  In *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998), the Colorado Supreme Court articulated the five elements required to sustain a private cause of action under the CCPA:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*See also Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998). Here, Defendant challenges the Plaintiff's ability to establish the third element-that the challenged practices affect the public.

Determining whether a plaintiff has shown significant public impact requires consideration of several factors, including the number of consumers affected by the practice; the relative sophistication and bargaining power of those consumers, and evidence that the challenged practice has previously affected consumers or is likely to do so again in the future. *Martinez*, 969 P.2d at 222. "The mere fact that a defendant has privately wronged a particular customer-for example, by breaching its contract with that customer-does not give rise to a CCPA claim. Rather, a plaintiff asserting violation of the CCPA must show that the defendant engaged in a deceptive or unfair trade practice directed at the public as a whole." *Johnstown Feed & Seed, Inc. v. Continental Western*, 641 F.Supp.2d 1167, 1180 (D. Colo. 2009) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 148-49 (Colo. 2003)).

Plaintiff asserts that Defendant engaged in numerous deceptive practices that violate the CCPA. Specifically, Plaintiff complains that Defendant failed to consider relevant medical information provided by Plaintiff to support his claim, failed to provide Plaintiff with an Independent Medical Examination in violation of its own policies and practices, and improperly terminated his disability benefits without obtaining any medical or vocational opinions supporting a determination that Plaintiff was capable of performing his material and substantial duties as a radiologist. In an effort to demonstrate that this conduct was directed at the public, Plaintiff points to a 2003 coordinated investigation of Defendant's disability practices by the state Insurance

Departments of Maine, Massachusetts, and Tennessee, which resulted in Defendant paying a $15,000,000 penalty and entering into a Regulatory Settlement Agreement ("RSA") that specified new standards, a penalty imposed by the State of California against Defendant in 2005, and investigations by other states into Defendant's claims handling practices. However, it is undisputed that the claims handling practices identified in these state investigations occurred well before Defendant's decision to investigate Plaintiff's claim, and that as of 2008 Defendant had satisfied all of the requirements of the RSA.

The fact Defendant was investigated, and found responsible for, mishandling claims in the past is not sufficient to show that the particular conduct complained of in this case was directed towards the public as a whole. *See Johnstown Feed*, 641 F.Supp.2d at 1180 (rejecting plaintiffs "categorical argument that 'bad faith handling of [an] insurance claim implicates the public interests protected by the CCPA.'"); *see also Bankruptcy Estate of Morris v. COPIC Ins. Co.*, 192 P.2d 519 (Colo. App. 2008) (rejecting plaintiff's assertion that a claim for bad faith, by its very nature, involves a public impact). Here, the challenged conduct is specific to Defendant's investigation, and ultimate denial, of Plaintiff's disability claim. It is significant that Defendant has previously paid disability benefits to Plaintiff and its investigation of Plaintiff's disability claim was predicated upon its receipt of an anonymous letter challenging Plaintiff's disability status. It was only after receipt of this anonymous letter that Defendant began its investigation into Plaintiff's disability. Thus, the allegations in this case are based on conduct that is unique to the particular transaction between Plaintiff and Defendant and the particular circumstances of this case. Therefore, I find that and Plaintiff has failed to

establish that the practice challenged in this case previously affected a significant number of consumers or is likely to do so again in the future, and Plaintiff's second claim for relief for violation of the CCPA must be dismissed.

### 2. Intentional Infliction of Emotional Distress

Next, I must decide whether Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction emotional distress. As an initial matter, I must determine whether Florida or Colorado law governs this claim. As a federal court exercising its diversity jurisdiction, I must apply the choice of law rules of the forum state. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007). In Colorado, tort claims are analyzed under the most significant relationship approach as expressed in Restatement (Second) of the Conflict of Laws §§ 145, 171. *Id.*

Section 6(2) of the Restatement sets out the following principles to be considered in resolving choice of law issues:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement (second) of Conflict of Laws § 6 (1971). Section 145 of the Restatement

further clarifies how these factors should generally be applied in tort cases, such as the instant matter:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 145.

In this case, Plaintiff claims the tortious injury occurred in a number of different states, including Colorado, Florida, Massachusetts, and California. While Plaintiff was a resident of Florida at the time Defendant determined that it would terminate his benefits, a large portion of Plaintiff's outrageous conduct claim is premised on Defendant's submission of fraud reports to officials in both Florida and Colorado. Although Plaintiff is currently domiciled in Florida, he was domiciled in Colorado for twenty years and currently maintains a residence in the state. Defendant has its principal place of

business in Maine and while Defendant has an office in Colorado, it maintains no offices in Florida.  Plaintiff was a resident of Colorado when he applied for, purchased, and paid his disability policy premiums to Unum.  He was also a Colorado resident when he became disabled, applied for, and received disability benefits.  Based on Plaintiff's significant contacts with Colorado, and the fact that the alleged tortious conduct occurred in a variety of states including Colorado, I find that the relationship between the parties was centered in Colorado.  Therefore under § 145 examining the relevant factors, I find that Colorado has the most significant relationship to the occurrence and the parties in this case.

In Colorado, the elements of an outrageous conduct claim are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001).  "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question."  *Id.*  "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high."  *Id.*  "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*; *see also Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988).  Language from the Restatement of Torts emphasizes the limited

nature of this tort: "It has not been enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, cmt d.

Here, Plaintiff's claim for outrageous conduct is based on allegations that Defendant improperly terminated his disability benefits in violation of its own practices and procedures and various settlement agreements; failed to obtain an independent medical examination; and provided fraud reports to the State of Colorado and other Florida state agencies that contained misleading and inaccurate information concerning Plaintiff's daily activities and omitted information concerning Plaintiff's medical condition. It is undisputed that Defendant had a mandatory obligation to report suspected fraud to the state governmental authorities responsible for insurance. While the Florida Office of Inspector General found that the conduct of the detective that investigated Plaintiff was "unprofessional," the detective was not employed by Defendant, and Defendant is not responsible for his conduct.

After viewing all of the evidence in the light most favorable to Plaintiff, I find that Defendant's alleged conduct supports Plaintiff's contention that Defendant mishandled Plaintiff's claim and violated its internal policies in the process. However, a claim for outrageous conduct must be based upon conduct that is more egregious than either the conduct underlying a bad faith breach of contract claim or a willful and wanton breach of contract claim. *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 129 (Colo. App. 1998). Here, the conduct alleged by Plaintiff does not rise to the level of behavior that is

"so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *See, e.g.*, *McCarty*, 15 P.3d at 1126-27 (claim that supervisors sought to drive plaintiff out of his employment through a pattern of intimidation and harassment that included threatening phone calls and physical intimidation in the form of vehicular assaults was not outrageous as a matter of law); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (allegations "that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that Coors fired Floyd to scapegoat him for these crimes" was not outrageous as a matter of law). Therefore, I find that Plaintiff's sixth claim for relief for Outrageous Conduct must be dismissed.

IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant Unum's Motion for Partial Summary Judgment, [doc.#83], filed June 1, 2009 is **GRANTED** and Plaintiff's Fourth Claim for Relief and Sixth Claim for Relief are **DISMISSED**.

Dated: December 18, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge